**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AARK RESTAURANT GROUP LLC; and AMOL R. KOHLI, | : : : | **CIVIL ACTION** |
| Plaintiffs, | : : | **No. 2:22-cv-01433** |
| v. | : : | |
| UNITED STATES SMALL BUSINESS ADMINISTRATION; ISABAELLA CASILLAS GUZMAN, in her Official Capacity as the Administrator of the United States Small Business Administration; and THE UNITED STATES OF AMERICA, | : : : : : : : : | |
| Defendants. | : : | |

<u>**VERIFIED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**</u>

Plaintiffs AARK Restaurant Group LLC and Amol R. Kohli, by and through undersigned counsel, hereby bring this action against defendants, the United States Small Business Administration, Isabella Casillas Guzman, in her Official Capacity as Administrator of the Small Business Administration; and the United States of America, and aver as follows:

<u>**INTRODUCTION**</u>

Plaintiffs bring this civil action to obtain emergency declaratory and injunctive relief. Plaintiffs seek a judicial declaration that the Small Business Administration's persistent failure and refusal to approve requested loan increases in funding under the COVID-19 Economic Injury Disaster Loan program ("EIDL") is arbitrary and capricious in violation of the Administrative Procedure Act for the following reasons:

a.    The SBA subjected applications associated with Amol R. Kohli to a heightened and unreasonable standard on the basis of the fact he is a victim of identity theft. Kohli

discovered a PPP loan fraud scheme, perpetrated by someone unknown to him, that illegally stole and used a dormant shell entity owned by Kohli to perpetuate the fraud. Notwithstanding the fact that Kohli has undertaken to clear his good name by investigating this scheme and submitting irrefutable documentary evidence to the SBA, and to the SBA Office of Inspector General ("SBA OIG"), demonstrating conclusively that Kohli is a victim and not a perpetrator of this fraud, the SBA has shown bureaucratic indifference to his plight. Instead, it placed blanket agency hold codes on virtually all of Kohli's businesses within the SBA system, and in addition, the SBA has sought to run out the clock by subjecting Kohli's current EIDL loan applications to redundant and unnecessary reviews and unreasonable delays, all in the pursuit of attempting to find any plausible excuse for denying approval of meritorious requests for the benefits earmarked by Congress for small businesses harmed by the COVID-19 pandemic.

b.    The SBA initially determined that AARK Restaurant Group LLC was qualified and approved for funding under the Covid-19 EIDL loan program, and it approved funding for AARK Restaurant Group LLC prior to Kohli's discovery and notifying the SBA that he was a victim of identity theft.

c.    Later, after Kohli made SBA aware that he was a victim of identity theft, the SBA denied qualified requested loan increases in EIDL funding to AARK Restaurant Group LLC, on the basis of immaterial discrepancies of two separate companies' prior loan requests, each unrelated to AARK Restaurant Group LLC, and both of which were also approved and funded by the SBA.

d.    The SBA acknowledged that it has no internal rule or procedure that requires or directs it to deny funding to one company on the basis of a discrepancy in a past loan request made by a separate company.

2

e.    The immaterial issues for the two separate companies were fully and satisfactorily explained to the SBA, along with supporting documentation which the SBA accepted, and there is no rational basis for the SBA to use these issues as grounds to justify denying funding for separate companies, including AARK Restaurant Group LLC.

f.    The SBA has not identified any relevant or material issues with AARK Restaurant Group LLC's original application or the application for an increase to EIDL funding, and there is no legal justification to deny the increases sought and which Congress has expressly authorized.

To avoid irreparable harm, Plaintiffs seek immediate declaratory and injunctive relief to secure the funding increases to which they are entitled and for which they first applied more than six months ago. The available funding pool under EIDL is now almost depleted. Unless this Court acts immediately, Plaintiffs will be without any available recourse.

## JURISDICTION AND VENUE

1.    Jurisdiction is conferred upon this Court for the resolution of the substantial constitutional questions presented here by virtue of 28 U.S.C. § 1331; 28 U.S.C. § 1343(a)(1), (3), (4); 28 U.S.C. § 1346(a)(2); and 28 U.S.C. § 1361.

2.    Authority for judicial review of agency action is further provided by 5 U.S.C. § 702, which states in pertinent part:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: *Provided*, That any mandatory or injunctive decree shall specify

the Federal officer or officers (by name or by title), and their
successors in office, personally responsible for compliance.

3. The prayer for declaratory relief herein is founded in part on Rule 57 of the

Federal Rules of Civil Procedure, as well as 28 U.S.C. § 2201, the latter of which provides that:

> . . . any court of the United States, upon the filing of an
> appropriate pleading, may declare the rights and other legal
> relations of any interested party seeking such declaration,
> whether or not further relief is or could be sought. . . .

4. The jurisdiction of this Court to grant injunctive relief is conferred upon this

Court by Rule 65 of the Federal Rules of Civil Procedure, as well as 5 U.S.C. § 705 and 28

U.S.C. §2202.

5. No other action, civil or criminal, is pending in any state court involving the

Plaintiffs regarding the activities and events here.

6. Venue lies within this Judicial District pursuant to 28 U.S.C. §1391(e)(1) because

the Defendants are an officer of an agency of the United States, an agency of the United States,

and the United States, Plaintiff AARK Restaurant Group LLC is deemed to reside in the

Commonwealth of Pennsylvania, and a substantial part of the events or omissions giving rise to

the claim occurred in the Commonwealth of Pennsylvania.


## PARTIES

7. Plaintiff AARK Restaurant Group LLC ("AARK") is a limited liability company

organized under the laws of the State of New Jersey. AARK's members include citizens and

residents of the Commonwealths of Pennsylvania and Virginia, and the State of New Jersey.

Accordingly, AARK is deemed to be a citizen of and reside in the Commonwealth of

Pennsylvania.

8.      Plaintiff Amol R. Kohli ("Kohli") is an adult individual.  At all relevant times, Kohli has been the managing member of AARK.

9.      Defendant United States Small Business Administration (the "SBA") is an independent federal agency created and authorized pursuant to 15 U.S.C. § 633, *et seq.* The SBA maintains a branch office at 660 American Ave., Suite 301 in King of Prussia, Montgomery County, Pennsylvania, which is within the Eastern District of Pennsylvania.

10.      Defendant Isabel Casillas Guzman ("Guzman," or the "Administrator") is the Administrator of the SBA, a Cabinet-level position, and is sued in her official capacity only, as the Administrator of the SBA.

11.      Authority to sue the Administrator is granted by 15 U.S.C. § 634(b), which states, in part:

> In the performance of, and with respect to, the functions, powers, and duties vested in him by this chapter the Administrator may—(1) sue and be sued in any court of record of a State having general jurisdiction, or in any United States district court, and jurisdiction is conferred upon such district court to determine such controversies without regard to the amount in controversy . . . .

12.      Defendant United States of America is a sovereign nation dedicated to the protection of life, liberty, and property as set forth in the Bill of Rights and other provisions and amendments to the Constitution of the United States.

13.      Plaintiffs do not seek damages and pray only for declaratory and injunctive relief under 5 U.S.C. § 701, *et seq.* in order to restrain the actions of the SBA and the Administrator in each of their official capacities.

## FACTUAL BACKGROUND

14.      On January 31, 2020, the federal government declared a public health emergency

as to the outbreak of the novel coronavirus SARS-CoV-2, which causes the disease COVID-19.
*See https://www.hhs.gov/about/news/2020/01/31/secretary-azar-declares-public-health-emergency-us-2019-novel-coronavirus.html.*

15.    COVID-19 is believed to have infected at least 80,191,020 people and killed 982,663 people in the United States. Those figures are current to date but continue to be updated at *https://covid.cdc.gov/covid-data-tracker/#datatracker-home*.

16.    As governments and institutions responded to COVID-19, the World entered a global recession deeper than any since the end of War World II.

*https://www.brookings.edu/research/social-and-economic-impact-of-covid-19/*

17.    The recession impacted the restaurant industry especially hard. According to National Restaurant Association, the restaurant industry still has not returned to pre-pandemic revenue, it employs one million fewer people than it did prior to the pandemic, and 90,000 restaurant locations are still temporarily or permanently closed as a result of the pandemic.

*https://restaurant.org/research-and-media/research/industry-statistics/national-statistics/*

18.    In April 2020, unemployment rates reached 39.3% in the leisure and hospitality industries. *https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8508391/#B6-ijerph-18-10378*

19.    In Pennsylvania, where most of AARK's restaurants are located, restaurant employment levels are still down more than 10% from pre-pandemic levels.

*https://restaurant.org/research-and-media/research/economists-notebook/analysis-commentary/restaurant-employment-remains-dampened-in-most-states/.*

20.    In a precursor to the more well-known CARES Act, Congress passed the Coronavirus Preparedness and Response Supplemental Appropriations Act, 2020, on March 6, 2020. In it Congress gave the SBA authority to make disaster loans to businesses injured by the

COVID-19 pandemic. *See* Public Law No. 116-123.

21.    On March 16, 2020, the SBA also announced that it would lend to small businesses affected by COVID-19 under the agency's Economic Injury Disaster Loan ("EIDL") program. *See https://www.sba.gov/article/2020/mar/16/sba-provide-disaster-assistance-loans-small-businesses-impacted-coronavirus-covid-19.*

22.    Congress later provided additional funds for the program, and as of March 15, 2022, the SBA had allocated more than $351 billion to 3.9 million small businesses borrowers. *See https://www.sba.gov/article/2022/mar/15/sba-administrator-guzman-announces-key-policy-change-existing-covid-economic-injury-disaster-loan*

23.    Originally the program was capped at $150,000 per borrower entity and at $2,000,000 per borrower affiliate. The per borrower cap was increased to $500,000 in March of 2021 and again to $2,000,000 in September 2021 with an affiliate cap of $10,000,000. *See https://www.sba.gov/article/2021/mar/24/sba-increase-lending-limit-covid-19-economic-injury-disaster-loans; https://www.sba.gov/article/2021/sep/09/sba-administrator-guzman-enhances-covid-economic-injury-disaster-loan-program-aid-small-businesses.*

24.    As of January 1, 2022, the SBA stopped accepting new applications, but it continues to accept requests for increases, reconsideration and appeals. https://www.sba.gov/funding-programs/loans/covid-19-relief-options/covid-19-economic-injury-disaster-loan/about-covid-19-eidl

25.    However, the funding for COVID-19 is rapidly being exhausted with some estimates suggesting it will be depleted during April 2022. https://www.accesswire.com/695766/SBA-EIDL-Loans-Last-Chance-for-Increase-or-Reconsideration.

26.    Prior to the onset of COVID-19, AARK operated, and provided support to eight full-service Friendly's Restaurant franchises located in the Pennsylvania, New Jersey and Florida. Each restaurant is owned by a separate, single purpose limited liability company of which Kohli is the managing member, and in addition, Kohli owns and operates several other restaurant businesses and franchises (collectively the "AARK Organization").

27.    AARK provided employment to approximately 170 people prior to onset of the Covid-19 pandemic.

28.    The pandemic exacted a massive economic toll on the AARK Organization. AARK's revenue and pre-tax operating profit in 2020 was reduced by 38% and 71% respectively when compared to 2019.

29.    Every location owned and/or operated by the AARK Organization was forced to close temporarily to comply with government regulations.

30.    Despite Plaintiffs' best efforts, several locations were forced to close permanently.

31.    Moreover, consumers and government responses to the pandemic have caused the AARK Organizations' costs to increase significantly. By way of example, AARK was forced to outsource delivery capabilities and delivery charges to third-party service providers at a cost of approximately $250,000 in 2020. This was a new charge that AARK was forced to absorb in order to attempt to maintain its business as result of Covid-19.

32.    Despite this, because of access to assistance from government programs, such as PPP loans and EIDL loans, AARK has managed to continue to employ roughly 140 individuals today.

33.    In total, within the AARK Organization, Kohli has an ownership interest in sixteen companies that were entitled to receive, and did receive, EIDL funding.

34.     In the second quarter of 2020, AARK applied for and received an EIDL loan in the amount of $150,000, which was the cap at the time due to the administrative limits established under the program due to funding limitations.

35.     AARK's initial application number was XXXXX9622 and the SBA Loan number is XXXXX7801.

36.     No issues were raised by the SBA in regard to AARK's initial application and funding was received promptly.

37.     When the SBA increased the funding limit to $2 million per company and $10 million per parent company and affiliates, AARK was eligible for such an increase, and it requested such on September 12, 2021. AARK's economic injury, based on the SBA EIDL guidelines for calculating economic injury, was in excess of $3,875,000.00. Thus, AARK was eligible to receive a loan increase capped at $2 million.

38.     Between September 11, 2021 and December 18, 2021, nine other companies in the AARK Organization, all of which were also entitled increases under EIDL, also submitted requests for loan increases. The total economic losses demonstrated by the AARK Organization in its documentation, as calculated by the SBA under the EIDL program, amounts to in excess of $8,000,000.00.

39.     According to the SBA, the decisions on the applications for increase should have been made within 1.5 months of the application submission. *See* *https://www.sba.gov/sites/default/files/2021-09/COVID-ProgramUpdates-09082021-508.pdf* at p. 4.

40.     On September 13, 2021, the SBA requested additional documentation from AARK in order to proceed with AARK's increase request.

41.     AARK provided the requested documentation on September 14, 2021.

42.    AARK did not receive any response from the SBA until October 14, 2021, despite following up with emails to the SBA on September 22, 2021 and October 8, 2021.

43.    Finally on October 14, 2021, AARK received an email informing it that the loan modification request was being processed.

44.    On October 15, 2021, the SBA underwriting team sent AARK an email requesting its 2019 tax return, which AARK had already submitted to the SBA.

45.    Because the October 15, 2021 email was directed to a spam mailbox, AARK did not respond to it until November 3, 2021, whereupon AARK re-submitted its 2019 tax return to the SBA.

46.    AARK followed up with the SBA again on November 5, 2021, attempting to ensure the November 3, 2021 email had been received by the SBA. However, the SBA did not respond.

47.    On November 9, 2021, AARK received an initial decline letter from the SBA, on the grounds that AARK had not substantiated its economic injury as required for EIDL eligibility.

48.    The following day, on November 10, 2021, AARK applied to the SBA option for reconsideration, providing proof of its economic injury and all of its filed tax returns.

49.    On November 16, 2021, the SBA requested AARK's IRS 4506-T and related documents, without any explanation for its requesting documents that had already been provided.

50.    AARK submitted all of the requested documents to the SBA on November 17, 2021, despite having previously submitted the same documents. To further ensure that all of AARK's submissions would be physically received by SBA, in addition to submissions of the documents to the SBA via the electronic portal and electronic mail, AARK also, via federal express certified mail, overnighted a document package to the SBA's Processing and Disbursement Center on the same day.

51.    On December 1, 2021, for the third time, the SBA requested AARK to provide IRS form 4506-T. AARK provided the requested documentation for the third time.

52.    On November 9, 2021, after AARK had received the initial denial from the SBA, AARK filed a congressional inquiry with Senator Corey Booker's office to complain that its application had been denied despite AARK's actual economic injury and provision of all of the relevant documents.

53.    As a result, a Congressional liaison at the SBA, Victoria Nellum, reached out to AARK on December 3, 2021, and asked it to submit the IRS form 4506-T yet again.

54.    AARK did so via email the same day and also faxed a copy of it to the SBA location in Texas where AARK's loan increase request was being reviewed.

55.    On December 7, 2021, Ms. Nellum informed AARK that there appeared to be fraudulent filings in an account in Kohli's name.

56.    It was subsequently determined that Kohli was a victim of identity theft and that the fraudulent activity on accounts in Kohli's name was accordingly not of his doing and not his responsibility.

57.    Ms. Nellum informed Kohli, that as a result of the fraudulent activity, the SBA was nevertheless requiring that Kohli submit the tax returns for 2018, 2019 and 2020 for every company in which he has an ownership interest.

58.    Upon information and belief, the fact that Kohli was a victim of fraud caused an intra agency "hold code" to be put on all loans associated with any company with which Kohli is affiliated.

59.    Thus, although Kohli is the victim of a crime, virtually all of the companies in the AARK Organization, as well as companies outside of the immediate AARK Organization but in

which Kohli owns an interest, were placed on administrative hold with the SBA.

60.     Kohli was informed of these hold codes, not by the SBA, but instead by the bank that handled the PPP loans for the AARK Organization.

61.     Upon information and belief, this hold code caused all of the EIDL increase applications for each company in the AARK Organization to be initially denied.

62.     Had Kohli not been the victim of identity theft, the loan increases requested by all of the companies in the AARK Organization would have been approved by the SBA.

63.     SBA formally made the request for the tax returns on December 12, 2021.

64.     Kohli promptly complied with the request.

65.     On December 13, 2021, the SBA informed Kohli that it had resolved the original ground for the denial of AARK's requested increase, as it had determined that AARK had indeed suffered a qualifying economic injury.

66.     The SBA told Kohli that as long as he submitted all of the required tax documentation, the AARK Organization's increase requests would be fully funded.

67.     On December 22, 2021, AARK submitted an affidavit to the SBA, providing the relevant information which demonstrates that Kohli was the victim of identity theft.

68.     At that time, the SBA regional office in New Jersey provided assistance to Kohli and AARK, verified the existence and operation of the AARK Organization, and confirmed that the requested increases were valid and legitimate.

69.     On December 29, 2021, the SBA again requested that AARK provide IRS form 4506-T. AARK did so for yet again.

70.     On January 5, 2022, because AARK still had not received any update, Kohli emailed the SBA to request that it expedite the review.

71.    On January 7, 2022, Brent Motes, a Loan Officer at SBA, informed Kohli that he would be reviewing the applications for all of Kohli's companies and asked him to resubmit documentation for the period 2018-2020 for all of Kohli's companies yet again.

72.    On January 14, 2022, AARK re-submitted everything that was again requested.

73.    On January 20, 2022, Ms. Nellum confirmed via email that the IRS had uploaded the tax transcripts for all of Kohli's companies. She further stated that the transcript delay from the IRS was what had caused the delay in the process. Despite having received the tax transcripts, Ms. Nellum also informed Kohli that the loan for AARK had "not been reactivated."

74.    Upon information and belief, the loans had not been reactivated due to the hold codes on Kohli's applications as a result of him being a victim of identity theft. Despite submitting the verified affidavit of identity theft to the SBA one month prior, the SBA agency hold codes were still active and in effect on all of Kohli's accounts.

75.    On January 26, 2022, Mr. Motes sent a new request for IRS form 4506-T's for all of Kohli's companies' applications.

76.    Mr. Motes informed Kohli in the same email that the "identity theft issues" are no longer "a barrier" to the loans being funded.

77.    Therefore, it is clear that as of January 26, 2022, the SBA acknowledge and agreed that Kohli is a victim of identity theft, not a perpetrator of fraud.

78.    However, despite this, there was no change in the behavior of the SBA towards Kohli and AARK.

79.    The SBA continued to scrutinize all applications associated with Kohli in a way that non-victims of identity theft do not encounter.

80.    Moreover, the SBA unreasonably searched for any apparent justification to deny a

requested increase to companies in the AARK Organization, and ultimately, operated outside of SBA protocols to deny the increase requested by AARK on the basis of immaterial discrepancies in applications made by separate companies.

81.    Indeed, the day after Mr. Motes informed Kohli that the identity theft issue would not prevent his loans from being funded, he emailed three other SBA employees internally stating:

> "We are waiting for tax transcripts to return on some of his businesses so the Agency Holds can be removed. Once all the transcripts are in, we will have the holds reviewed. The prospects of having the hold removed are no better than 50/50/. I spoke with Mr. Kohli yesterday and explained the process"

82.    Thus, despite acknowledging to Kohli that the SBA knew full well he was a victim and not a perpetrator, Mr. Motes stated that it was no better than a coin flip whether the "Agency Holds" would be removed in order to enable the AARK Organization to receive the funding increases to which they are entitled.

83.    On February 18, 2022, Kohli requested via email that the SBA fund the increase for those companies in the AARK Organization for which the SBA had already received transcripts from the IRS.

84.    Mr. Motes responded by stating that the SBA was still reviewing everything.

85.    While waiting for the SBA to make a determination, Kohli made every reasonable effort to exhaust his available remedies.

86.    On March 3, 2022, Kohli reached out to the SBA's Fraud Risk Management office to seek their assistance, but was rebuffed.

87.    On March 8, 2022 and on March 28, 2022, an attorney for Kohli and the AARK Organization sent a letter to the SBA's Office of Inspector General to inform it of the situation and seek its involvement in ensuring that Kohli's status as a victim would not endanger the funding for

his companies. The attorney never received any response from the SBA OIG.

88.    On March 14, 2022, now almost six months after AARK's initial application for an increase in funding, and more than a month and a half after Mr. Motes confirmed that the SBA was aware that Kohli was a victim not a perpetrator, Kohli followed up with Mr. Motes for an update and was informed by Mr. Motes, "The application is still being review[ed]. I'll notify you when we are closer to a decision."

89.    On March 16, 2022, another SBA employee who was attempting to assist Kohli, responded to Mr. Motes' email to ask if there was anything else that could be provided to speed up the review.

90.    After months of searching for a justification to deny the requested increases, on March 24, 2022, Mr. Motes contacted Kohli to inform him of what the SBA had found.

91.    According to Mr. Motes, there are two issues with applications for companies that had received EIDL funds, but which had not requested increased funding.

92.    The first company with an alleged issue is AARK Development Inc. ("AD"). The issue identified by the SBA is that the revenue figure provided by AD on its application did not match the revenue figure on AD's filed tax return for 2019. Specifically, AD had estimated its revenue at $75,000 on its application, but reported $0 in revenue on when it filed its tax return.

93.    The second company with an alleged issue is JPF1 LLC ("JPF1").

94.    The issued identified by the SBA is that, in its initial application, JPF1 had listed Kohli as manager with 0% ownership interest, but had not listed the actual owner.

95.    Due to these issues, Mr. Motes informed Kohli that the SBA would not authorize funding to any company in the AARK Organization.

96.    Kohli informed Mr. Motes on the call that both issues were fully and completely

explainable and provided written evidence and third-party documentation supporting Kohli's explanations.

97.    Kohli also enquired why errors on applications on unrelated companies were being used to deny applications from separate companies.

98.    Mr. Motes admitted there is no SBA guideline or procedure that authorizes the result of denying unrelated application from separate companies.

99.    Mr. Motes also informed Kohli that he could provide a letter with an explanation and that, although the SBA would consider the information, it was unlikely to change its decision.

100.    On March 28, 2022, Kohli submitted a letter entitled, "Letter of Explanation and Final Appeal" which fully and completely explained the only two issues identified by the SBA.

101.    With regard to AD, the revenue discrepancy occurred as a result of COVID-19. When AD applied for the EIDL loan, AD had not yet filed its 2019 tax returns, so it was required to estimate its revenue. AD generates revenues from royalty and service payments for consulting work. In prior years, AD had generated between $75,000 and $290,000 in revenues. For the work it did in 2019, it was entitled to approximately $75,000 in such royalties. However, since AD uses the accrual method of accounting, revenue recorded in calendar year 2019 by its internal bookkeeping was later reclassified by AD's outside accountant as uncollectible, resulting in zero revenue on the 2019 tax return filed in September 2020.

102.    Despite this full and valid explanation, prior to sending the response to the SBA, AD repaid the remainder of the loan it had received through the EIDL program, with interest.

103.    With regard to JPF1, Kohli informed the SBA that nothing about the application was incorrect. There was merely additional information that had not been provided at the time of the original application, and which was provided to the SBA thereafter and which the SBA accepted.

104.    Neither of these issues can reasonably be said to be material to the issue of whether to increase loans to the AARK Organization. It is apparent that the justifications are merely pretextual.

105.    On April 6, 2022, Kohli followed up with Mr. Motes asking if the SBA had reached a determination on the status of the other eligible companies.

106.    On April 7, 2022, Mr. Motes wrote, "At this time, there has been no change in the decision. I will notify you if that changes."

107.    With all administrative remedies fully exhausted and the funding for EIDL loans on the verge of being exhausted, Plaintiffs must now seek intervention from this Court to correct the SBA's arbitrary and capricious denial of the requested increases.

## COUNT I
## ARBITRARY AND CAPRICIOUS ACTION IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. §§ 701-706

108.    Plaintiffs incorporate herein by reference each and every paragraph above as though fully set forth herein.

109.    The APA requires courts to "hold unlawful and set aside" agency action that is "arbitrary," "capricious," an "abuse of discretion," or "unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706.

110.    The SBA's refusal to grant the requested funding increases is arbitrary, capricious, constitutes an abuse of its discretion and an unreasonably delay because, among other reasons:

a.      The SBA subjected applications associated with Kohli to a heightened and unreasonable standard on the basis of the fact he had been a past victim of identity theft, but does not subject non-victims of identity theft to the same standard.

b.      The SBA denied requested increases on the basis of immaterial discrepancies in two separate companies' prior loans requests – which loan requests were both approved and funded by the SBA.

c.      The SBA acknowledged that it has no internal rule or procedure that requires or directs it to deny funding to one company that is otherwise entitled to a government benefit on the basis of a minor discrepancy in a past loan request made by an entirely separate company.

d.      The immaterial issues for the two separate companies were fully and satisfactorily explained to the SBA, along with supporting documentation, and there is no rational basis or policy for the SBA to use these issues as grounds to justify denying funding for separate companies.

e.      The SBA has not identified any relevant and material issues with the original application or the application for an increase to EIDL funding, and there is no legal justification to deny the increases sought and which Congress has expressly authorized.


## COUNT II
## ACTION NOT IN ACCORDANCE WITH LAW IN VIOLATION OF THE
## ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. §§ 701-706

111.    Plaintiffs incorporate herein by reference each and every paragraph above as though fully set forth herein.

112.    Under the APA, 5 U.S.C. §§ 701-706, courts must overturn agency action that is "not in accordance with law," or that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2).

113.    The SBA is an "agency" under the APA.

114.    AARK and the other companies in the AARK Organization are entitled to loan increases under EIDL, but the SBA has applied arbitrary and capricious standards that conflict with the state Congressional purpose of EIDL to deny the government benefit to which they are entitled.

115.    As a result of the SBA's conduct, AARK and the other companies in the AARK Organization are suffering harm.

116.    The conduct of the SBA is contrary to law an in excess of its statutory authority.


**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs AARK Restaurant Group LLC and Amol R. Kohli respectfully request this Honorable Court to:

a.    Declare the action of the SBA in denying and/or failing to approve the requested loan increases of AARK and the other companies in the AARK Organization to be arbitrary, capricious and in violation of law.

b.    Grant preliminary and permanent injunctive relief directing Defendants, as well as their employees, agents, and representatives, to approve and fund the EIDL funding increase requests submitted by AARK Restaurant Group LLC and the companies in the AARK Organization.

c.       Enter an award of attorneys' fees and costs against the Defendants and in

favor of the Plaintiffs pursuant to 28 U.S.C. § 2412 and otherwise; and

d.       Grant such other and further relief as this Court may find to be just and

proper in these circumstances.

Date: April 12, 2022

STANLEY B. CHEIKEN, ESQUIRE
Attorney I.D. No. 62106
2617 Huntingdon Pike
Huntingdon Valley, PA 19006
(215) 572-8600
*Attorney for Plaintiffs*

DILWORTH PAXSON LLP

Date: April 12, 2022

By: /s/ James Rodgers, Esquire
    JAMES J. RODGERS, ESQUIRE
    Attorney I.D. No. 21635
    LINDA DALE HOFFA, ESQUIRE
    Attorney I.D. No. 34063
    1500 Market Street, Suite 3500E
    Philadelphia, PA 19102
    (215) 575-7277
    *Attorneys for Plaintiffs*

Of Counsel:
Geoffrey R. Bowser, Esquire
MENICUCCI VILLA CILMI, PLLC
2040 Victory Boulevard
Staten Island, NY 10314

# VERIFICATION

I, AMOL R. KOHLI, hereby state that I am a PLAINTIFF in the above action and that the facts contained in the forgoing COMPLAINT are true and correct to the best of my knowledge, information and belief. This Verification is made subject to the penalties provided in 28 U.S.C. §1746, relating to unsworn falsification to authorities.

AMOL R. KOHLI