**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **AARK RESTAURANT GROUP LLC, et al.,** : <br> **Plaintiffs,** : <br> : <br> **v.** : <br> : <br> **UNITED STATES SMALL** : <br> **BUSINESS ADMINISTRATION, et al.,** : <br> **Defendants.** : | Civ. No. 22-1433 |

**Diamond, J.**                                                                                           **April 28, 2022**

## MEMORANDUM

Plaintiffs—thirteen hospitality industry entities and their purported owner Amol Kohli—having requested COVID-related loan relief from the Small Business Administration, seek an immediate injunction requiring the Agency to: process their requests more "expeditiously"; disregard evidence that makes disapproval of the loan requests likely; and "set aside $6,036,600" so that the funds can be awarded to Plaintiffs (even though the SBA has already indicated that it will likely disapprove their requests). Plaintiffs' Motion suffers from so many defects, it is difficult to believe that it is seriously intended. It appears that this District is without venue to hear this matter and that this Court has no jurisdiction to issue a preliminary injunction against the SBA. Moreover, Plaintiffs have not remotely met the requirements for the issuance of the mandatory injunction they seek. They are not likely to prevail on the merits of the underlying dispute. They have not shown that they will suffer irreparable harm absent an injunction, nor have they explained why they waited for weeks before seeking "emergency" relief. Finally, any balancing of interests weighs heavily against this Court prescribing the efficiency of a federal agency or supervising how it should manage matters entrusted to it by Congress.

I.      PROCEDURAL HISTORY

Plaintiffs initially received Economic Injury Disaster Loan funds of $1,513,400 and they seek to increase the amount to $6,186,600. (Am. Compl. ¶ 51.) Plaintiffs have known since March 24, 2022 that the Agency will likely disapprove their EIDL loan increase applications because of discrepancies in applications from companies not named as plaintiffs here that are affiliated with Kohli. (Am. Compl. ¶¶ 103-111.)

Plaintiffs initially sought a preliminary injunction with respect to only two Plaintiffs: AARK Restaurant Group and Kohli. (Compl. ¶ 7-8; Mot. Prelim. Inj.) Anticipating that Defendants would assert a lack of venue, Plaintiffs filed an Amended Complaint adding twelve hospitality industry entities: (1) AARK Hospitality Bensalem FR Inc.; (2) AARK Hospitality Langhorne FR Inc.; (3) AARK Hospitality Morrisville FR Inc.; (4) AARK Hospitality Norristown FR Inc.; (5) AARK Hospitality Orlando FR Inc.; (6) AARK Hospitality Indian Harbor FR Inc.; (7) AARK Hospitality Danville FR LLC; (8) AARK Hospitality Wilkesbarre FR LLC; (9) AARK Hospitality Glassboro FR LLC; (10) AARK Hospitality Dunmore FR LLC; (11) AARK Hospitality Gloucester Inc.; and (12) Porter's Real Barbecue Company. The Agency opposes any grant of injunctive relief and has moved to dismiss for lack of venue and lack of subject matter jurisdiction. (Mot. to Dismiss); Fed. R. Civ. P. 12(b)(1), 12(b)(3).

The issues are fully briefed. (Doc. Nos. 5, 12, 13, 14, 16, 18.)

II.     LEGAL STANDARDS

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." <u>Mazurek v. Armstrong</u>, 520 U.S. 968, 972 (1997) (quoting 11A Wright & Miller, Fed. Prac. & Proc. § 2948 (3d ed. Apr. 2016)) (emphasis in original); Fed. R. Civ. P. 65(a). "A plaintiff seeking a preliminary

injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) (citations omitted). The moving party bears the "heavy burden" of showing that these elements weigh in favor of a preliminary injunction. Republican Party of Pa. v. Cortés, No. 16-5524, 2016 WL 6525409, at *4 (E.D. Pa. Nov. 3, 2016) (citing Ferring Pharms., Inc. v. Watson Pharms., Inc., 765 F.3d 205, 210 (3d Cir. 2014), and Punnett v. Carter, 621 F.2d 578, 588 (3d Cir. 1980)). For mandatory injunctions (such as the one sought here) Plaintiffs bear "a particularly heavy burden . . . requiring them to show a substantial likelihood of success on the merits and that their right to relief [is] indisputably clear." Hope v. Warden York Cnty. Prison, 972 F.3d 310, 320 (3d Cir. 2020) (quoting Acierno v. New Castle Cnty., 40 F.3d 645, 653 (3d Cir. 1994) and Trinity Indus., Inc. v. Chi. Bride & Iron Co., 735 F.3d 131, 139 (3d Cir. 2013)) (internal quotations omitted).

To establish irreparable harm, the moving party must make "a clear showing of immediate irreparable injury, or a presently existing actual threat; an injunction may not be used simply to eliminate a possibility of a remote future injury." Acierno, 40 F.3d at 655.

### III. DISCUSSION

#### A. Venue

Plaintiffs have sued the United States, the SBA, and the SBA's Administrator in her official capacity. The Parties thus agree that venue is determined under 28 U.S.C. § 1391(e)(1). (Am. Compl. ¶ 6; Mot. to Dismiss 9.) Accordingly, venue is present only where: (1) a defendant resides; (2) "a substantial part of the events or omissions giving rise to the claim occurred"; or (3) the plaintiff resides. 28 U.S.C. § 1391(e)(1)(A)-(C). For purposes of venue, a natural person resides

"in the judicial district in which that person is domiciled" and an entity-Plaintiff resides "only in the judicial district in which it maintains its principal place of business." 28 U.S.C. § 1391(c). Plaintiffs argue that venue is proper because "a substantial part of the events or omissions giving rise to the claim occurred" in this District and because the principal places of business of Plaintiffs AARK Bensalem, AARK Langhorne, AARK Morrisville, and AARK Norristown (collectively, the disregarded entities) are within this District. I disagree.

<u>Substantial Part of Events</u>

I must assess "not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim." <u>Cottman Transmission Sys., Inc. v. Martino</u>, 36 F.3d 291, 294 (3d Cir. 1994). To determine substantiality of those events or omissions "it is necessary to look at the nature of the dispute." <u>Id.</u> I must "focus on relevant activities of the defendant, not of the plaintiff." <u>Woodke v. Dahm</u>, 70 F.3d 983, 985 (8th Cir. 1995).

The Amended Complaint includes only a recitation of the venue standard. (Am. Compl. ¶ 6.) Plaintiffs submitted EIDL loan increase applications to the Agency between September 11, 2021 and December 18, 2021. (<u>Id.</u> at ¶ 50.) The applications were processed by the Agency's Texas office. (<u>Id.</u> at ¶ 67.) AARK Restaurant Group filed a congressional inquiry with New Jersey Senator Cory Booker's office. (<u>Id.</u> at ¶ 60.) The Agency's congressional liaison, Victoria Nellum, requested tax documentation, which AARK Restaurant Group submitted. (<u>Id.</u> at ¶¶ 60-67.) AARK Restaurant Group also contacted the Agency's Fraud Risk Management Office and the Agency's Office of Inspector General—neither of which provided any information. (<u>Id.</u> at ¶¶ 100-101.) Almost all substantive communications described in the Amended Complaint are between Kholi and Agency Loan Officer Brent Motes. (<u>Id.</u> at ¶¶ 104-108.)

The Amended Complaint does not include an allegation that any of the people involved in

the Agency's decisions are located in this District.  Rather, in response to the Agency's argument that venue is improper in this District, Plaintiffs submitted several emails between Kohli and Kimberly Stout, an Agency Economic Development Specialist in the Eastern Pennsylvania District Office.  (See Pl. Mem. on Venue Ex. A-D.)  None of these communications—or any others—are cited in the Amended Complaint as a basis for venue.  Assuming I may now consider these belated submissions, the emails do not show that a substantial part of the events occurred in this District: Ms. Stout merely referred Kohli to established procedures for requesting reconsideration and stated that she had "no authority to request priority or expedite [his] request."  (Id.)  Accordingly, based on the facts actually alleged in the Amended Complaint, the relevant activities—the decisionmaking regarding Plaintiffs' EIDL loan increase applications—occurred in Texas, and not in this District.

<u>Plaintiffs' Principal Place of Business</u>

Four of the newly added Plaintiffs have their principal place of business within this District: AARK Bensalem, AARK Langhorne, AARK Morrisville, and AARK Norristown.  Defendants note, however, that none of these Defendants has standing.  *Plaintiffs have not responded to this argument.*

To establish Article III standing, Plaintiffs must show that:

> (1) they suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant[s], and (3) that is likely to be redressed by a favorable judicial decision.

Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (citing Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 180–81 (2000); Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992)).  Plaintiffs "must 'clearly . . . allege facts demonstrating' each element."  Id. at 1547 (citing Warth v. Seldin, 422 U.S. 490, 517 (1975)).  Because "a valid claim for relief is *not* a

prerequisite for standing," my "standing inquiry must avoid any consideration of the merits beyond a screening for mere frivolity." Cottrell v. Alcon Labs., 874 F.3d 154, 166 (3d Cir. 2017) (emphasis in original); Mielo v. Steak 'n Shake Operations, Inc., 897 F.3d 467, 479 (3d Cir. 2018).

Plaintiffs do not allege that any of the businesses based in this District applied for an EIDL loan or EIDL loan increase. (Am. Compl. ¶ 51.) Rather, they allege that these Plaintiffs are "managed by [AARK Restaurant Group] and are considered disregarded entities solely for tax purposes. At all relevant times, based upon [Agency] guidelines, applications for EIDL loans and loan increases for [the disregarded entities] are submitted on consolidated tax returns and financial reports through [AARK Restaurant Group]." (Id. at ¶ 14.) Any distribution of funds from the loan to the disregarded entities would be at the sole discretion of AARK Restaurant Group. Accordingly, the disregarded entities have not suffered an injury in fact. See Lujian v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (The injury must be "(a) concrete and particularized . . . and (b) actual or imminent, non 'conjectural or 'hypothetical.'"); Reilly v. Ceridian Corp., 664 F.3d 38, 41-42 (3d Cir. 2011) ("Allegations of 'possible future injury' are not sufficient to satisfy Article III."). Moreover, the local Plaintiffs have alleged no facts showing that AARK Restaurant Group is unable to protect its interests—indeed it is also a Plaintiff to this suit. Accordingly, none of the Plaintiffs who reside in this District has standing to bring suit on AARK Restaurant Group's behalf. See Powers v. Ohio, 499 U.S. 400, 410-11 (1991) (requiring, *inter alia*, "some hindrance to the third party's ability to protect his or her own interest" for a litigant to bring actions on its behalf).

### B. Subject Matter Jurisdiction

Absent a waiver of sovereign immunity, courts do not have subject matter jurisdiction over claims against the United States, a federal agency, or a federal official sued in her official

capacity. Treasurer of N.J. v. U.S. Dep't of Treasury, 684 F.3d 382, 395-96 (3d Cir. 2012). "A waiver of sovereign immunity must be express and unambiguous to confer subject matter jurisdiction." Id. Although the Small Business Act contains a waiver of sovereign immunity, the waiver includes an explicit exception: "no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Administrator or his property." 15 U.S.C. § 634(b)(1). The Circuit Courts disagree on the breadth of the waiver's exception. Springfield Hosp., Inc. v. Guzman, 28 F.4th 403, 415 n.16 (2nd Cir. 2022) (noting a circuit split and declining to address the issue). The Fourth and Fifth Circuits have held that § 634(b)(1) is a blanket exception that prohibits any injunction. Enplanar, Inc. v. Marsh, 11 F.3d 1284, 1290 n.6 (5th Cir. 1994); J.C. Driskill, Inc. v. Abdnor, 901 F.2d 383, 386 (4th Cir. 1990). The First Circuit has held, however, that although § 634(b)(1) bars an injunction that "interfere[s] with its internal workings by judicial orders attaching agency funds," it does not "bar to judicial review of agency actions that exceed agency authority where the remedies would not interfere with internal agency operations." Ulstein Maritime, Ltd. v. U.S., 833 F.3d 1052, 1057 (1st Cir. 1987). The Third Circuit has not addressed this question.

The injunctive relief Plaintiffs seek would certainly interfere with the SBA's internal workings, requiring me to: (1) direct the Agency to "expeditiously process" Plaintiffs' EIDL loan increase applications; (2) prohibit the Agency from considering specific evidence and circumstances; and (3) direct the Agency to set aside $ 6,036,600. Injunctive relief is thus barred under even Ulstein's narrow waiver exception. See Geisler v. Small Bus. Admin., Civ. No. 21-1693, 2022 WL 1002766, at *3 (W.D. Pa. Apr. 4, 2022).

Plaintiffs' attempt to frame their injunction request as a review of an agency decision under the Administrative Procedures Act fails because the "APA's waiver of sovereign immunity is

qualified" in that it does not "confer[] authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." Tradeways, Ltd. v. U.S. Dep't of the Treasury, Civ. No. 20-1324, 2020 WL 3447767, at *9 (D. Md. June 24, 2020). Moreover, this argument assumes that the SBA's decision is final, which, as I discuss below, Plaintiffs have failed to establish. See 15 U.S.C. § 704. Accordingly, it is by no means clear that I have jurisdiction to issue the preliminary injunction Plaintiffs seek.

### C. Preliminary Injunction

Defendants urge that Plaintiffs have not shown a likelihood of success, or immediate and irreparable harm, and that the balance of interests weighs against a preliminary injunction. (Def. Resp.) I agree.

Likelihood of Success

The Agency argues that Plaintiffs are unlikely to succeed on the merits because: (1) the matter should be dismissed for lack of subject matter jurisdiction; (2) no Agency action has been unreasonably delayed; (3) the Agency's decision is not final; and (4) Plaintiffs have not shown that the anticipated decision was not supported by substantial evidence. As I have already discussed, it appears that venue is not proper in this District and that this Court does not have subject matter jurisdiction to issue the injunction Plaintiffs seek. Although this alone refutes Plaintiffs' claimed likelihood of success, there are other grounds supporting this determination: Plaintiffs have not made a clear showing that they will succeed on their unreasonable delay claim or their challenge to the Agency's final decision.

*Unreasonable Delay*

Plaintiffs allege that the SBA's decision has been unreasonably delayed and ask me to direct the Agency to "expeditiously process" their EIDL loan applications. (Mot. Prelim. Inj. ¶¶

2-3); 5 U.S.C. § 706(1). To determine whether there has been an "unreasonable delay," however, I must "balance the importance of the subject matter being regulated with the regulating agency's need to discharge all of its statutory responsibilities under a reasonable timetable." Prometheus Radio Project v. Fed. Commc'ns Comm'n, 824 F.3d 33, 39 (3d Cir. 2016). I must consider factors including: (1) the length of the alleged delay; (2) the "context of the statute authorizing the agency's action"; (3) "the consequences of the agency's delay"; and (4) the "practical difficulty in carrying out a legislative mandate, or need to prioritize in the face of limited resources." Oil, Chem. & Atomic Workers Union v. Occupational Safety & Health Admin., 145 F.3d 120, 123 (3d Cir. 1998).

Plaintiffs do not address even one of these factors. Rather, they allege that under the EIDL the Agency has "allocated $351 billion to 3.9 million small business borrowers." (Am. Compl. ¶ 34.) This allegation is less than helpful. Moreover, the SBA has provided two reasons for any perceived delays: (1) fraudulent filings in one of Kohli's accounts; and (2) discrepancies in initial EIDL loan applications by companies that are affiliated with Kohli. (Am. Compl. ¶¶ 68, 104.) Accordingly, Plaintiffs have not made a clear showing that their unreasonable delay claim has a substantial likelihood of success.

*Finality of Agency Decision*

The Agency has not issued a final decision. I may review only final agency decisions. Bennett v. Spear, 520 U.S. 154, 177 (1997). Finality requires that the action: (1) "must mark the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature"; and (2) "be one by which rights or obligations have been determined, or from which legal consequences will flow." Id. at 177-178 (internal citations and quotations omitted). On April 21, 2022, the Agency's counsel informed Plaintiffs' counsel that the SBA

"intends to issue a final and reasoned decision some time during the week of April 25, 2022" and that decision "will be based on its conclusion that Kohli misrepresented and/or omitted facts in connection with . . . EIDL loan submissions in 2020" for other companies. (Am. Comp. ¶ 121.) Plaintiffs thus urge that counsel's statements show that "there is no question that the [Agency] made its decision" and that the "written decision [will be] based upon the same criteria identified by Mr. Motes." (Pl. Reply to Mot. to Dismiss 3.) "In order to permit meaningful judicial review, an agency must 'disclose the basis' of its action." Dep't of Comm. v. New York, 139 S. Ct. 2551, 2573 (2019). Even if the Agency's counsel has stated that she expects the Agency's final, written decision to be substantially the same as the explanation Mr. Motes gave to Plaintiffs, this is neither a binding statement, nor a complete explanation that allows for intelligent review.

*Merits of Agency Decision*

Even if I were to review the Agency's anticipated decision based on the preliminary reasons advanced by Mr. Motes and the Agency's counsel, Plaintiffs have not made a clear showing of a substantial likelihood of success on the merits. I may set aside the Agency's decision only if it is "unsupported by substantial evidence," or is "arbitrary, capricious, an abuse of discretion, or [is] otherwise not in accordance with law." 15 U.S.C. § 706(2). Plaintiffs urge that the Agency "has not and cannot provided any written guidelines or procedures that require it, or even provide it with discretion, to deny loan applications for unrelated companies on these bases." (Pl. Br. 17.) Yet, the EIDL allows for *discretionary* loan awards. 15 U.S.C. § 9009(d) (The Agency "may . . . approve an application—(A) based solely on the credit score of the applicant; or by using alternative appropriate methods to determine an applicant's ability to repay."). Moreover, although the statute provides that the SBA *may* consider information from the Department of Treasury, it does not proscribe the Agency from considering other information. Id. Plaintiffs have

provided no authority that the Agency is precluded from also considering Kohli's other applications (in which the Agency believes Kohli made fraudulent statements) in deciding to disapprove of Plaintiffs' EIDL loan increase applications.

<u>Immediate and Irreparable Harm</u>

Assuming, *arguendo*, that venue is proper in this District, that this Court has jurisdiction to issue an injunction, and that Plaintiffs have shown a likelihood of success on the merits (although the opposite appears to be true), Plaintiffs have not made a clear showing of immediate and irreparable harm. "[T]o show irreparable harm a plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial." <u>Acierno v. New Castle Cnty.</u>, 40 F.3d 645, 653 (3d Cir. 1994) (internal quotation marks and citation omitted). The harm must be "likely" to occur "in the absence of an injunction." <u>Ferring Pharms., Inc. v. Watson Pharms., Inc.</u>, 765 F.3d 205, 217 n.11 (3d Cir. 2014).

Plaintiffs allege a number of speculative harms, including that it will be "unfairly hampered in their economic recovery from the COVID-19 pandemic." (Pl. Br. 19.) They state that "[d]esireable financing terms, such as those offered by the EIDL program can be the difference between operating a profitable, thriving businesses employing over 275 people, or on the other hand, incurring losses of jobs, delays in growth, closures of additional locations, or even permanently going out of business entirely." (<u>Id.</u>) Yet, Plaintiffs do not state that any of these "harms" will occur absent the injunction—indeed they do not even submit evidence showing their financial circumstances. Nor have Plaintiffs explained why they waited a month (until the SBA had dispersed almost all available funds) to request an "emergency" injunction after their most recent denial of their application and more than five months after they received an initial denial of their application. (<u>See</u> Am. Compl. ¶ 65, 103.) In these circumstances, Plaintiffs have not made

a clear showing of immediate and irreparable harm.  See Prestige Transp., Inc. v. U.S. Small Bus. Admin., 850 F. App'x 551, 550 (affirming finding of no irreparable harm because the plaintiffs "notably failed to submit *any* evidence of their current financial condition, despite alleging that they faced "business ruination" absent an injunction allowing them access to EIDL assistance—a failure that is particularly [significant], where, as here, only economic harm is alleged).

Balance of Interests

Even if Plaintiffs could show a substantial likelihood of success or immediate and irreparable harm, the balance of interests weighs heavily against the issuance of a preliminary injunction.  The SBA is authorized to grant "disaster loans to businesses injured by the COVID-19 pandemic." (Am. Compl. ¶ 32.)  The Agency "allocated more than $3.51 billion to 3.9 million small businesses borrowers." (Id. at ¶ 34.)  The Agency has "stopped accepting new applications," however, and the funding "is rapidly being exhausted." (Id. at ¶ 36-37.)  Plaintiffs urge that the interest in ensuring the success of a small businesses favors granting an injunction. (Pl. Br. 19.)  I disagree.  There is a far stronger public interest in favor of allotting limited funds only to those small businesses that are qualified and free from taint.  Accordingly, Plaintiffs have not made a clear showing that the balance of equities is better served by issuance of injunction.

### IV.   CONCLUSION

The only indisputable clarity Plaintiffs have made out is that they are not entitled to the extraordinary relief they seek. Rather, because Plaintiffs have failed to make the requisite showings of a substantial likelihood of success, immediate and irreparable harm, or that the balance of equities favors issuance of an injunction, I will deny their Motion.

An appropriate Order follows.

April 28, 2022                                              */s/ Paul S. Diamond*
                                                             Paul S. Diamond, J.